MATILDA E. GOODWIN, Individually and as Sole Surviving Executrix of MATILDA E. CODDINGTON, Deceased, Respondent, *v.* EMILY M. CODDINGTON, Appellant, Impleaded with GILBERT S. CODDINGTON et al.

|     |     |
|-----|-----|
| 154 | 283 |
| 156 | 435 |
| 154 | 283 |
| 166 | 408 |
| 154 | 283 |
| 167 | 493 |
| 154 | 283 |
| 78 AD¹612 |  |

1. WILL — CONSTRUCTION. Where the language of a codicil is not plain, or its meaning is doubtful, an interpretation that excludes issue from a vested remainder originally limited by the will upon the life estate of a parent, or prevents the issue of a deceased child from participation in the estate, is not favored.

2. PRESERVATION OF REMAINDER TO ISSUE OF DECEASED CHILD. Where a will gives a share of the estate to a child for life, with remainder over to his issue, if any, and the child dies before the testator, leaving issue, a codicil dealing with the share so originally devised should, if it and the will are reasonably capable of such an interpretation, be construed as continuing the remainder in the issue of the deceased child; and if the codicil imposes some disposition of such share to others, a reasonable construction, limiting such disposition to the substitution of life tenants only, is to be preferred.

*Goodwin* v. *Coddington*, 84 Hun, 605, reversed.

(Argued October 25, 1897 ; decided November 23, 1897.)

APPEAL from an order of the General Term of the Supreme Court in the first judicial department, entered February 7, 1895, which overruled exceptions to a decision of the court on trial at Special Term, upon which an interlocutory judgment was entered in favor of plaintiff November 13, 1894, and denied a motion for a new trial under section 1001 of the Code of Civil Procedure.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward S. Rapallo* for appellant. The intention of the testatrix in the 2d clause of the 3d codicil was merely to devise life estates to her own surviving children in the one-fifth originally given to Jefferson for life, and not to disturb the remainders vested in fee in Jefferson's children, nor to disinherit Jefferson's two children. ( *Viele* v. *Keeler*, 129 N. Y. 199 ; *Redfield* v. *Redfield*, 126 N. Y. 466 ; *Byrnes* v. *Stilwell*, 103 N. Y. 453 ; *Hard* v. *Ashley*, 117 N. Y. 606 ; *Rose-*

*boom* v. *Roseboom*, 81 N. Y. 356 ; *Clarke* v. *Leupp*, 88 N. Y.
228 ; *Freeman* v. *Coit*, 96 N. Y. 63 ; *Taggart* v. *Murray*, 53
N. Y. 233 ; *Van Vechten* v. *Keator*, 63 N. Y. 52 ; *Stokes* v.
*Weston*, 142 N. Y. 433.)

*Herbert J. Bickford* and *Treadwell Cleveland* for
respondent.

O'Brien, J.    This action was brought to procure a judicial
construction of the will of Matilda E. Coddington, who died
in the year 1882, leaving a will dated in 1869, with codicils, the
last of which was made in 1876.    Among the property owned
by the testatrix at the time of her death was a three-fourths
interest in certain real estate at No. 17 Wall street in the city
of New York, which was disposed of by the following clause
of the will :

" I give, devise and bequeath to my children, Jefferson,
Gilbert S., Clifford, Matilda E., and Louisa, each an undi-
vided fifth part of all my interest in the building and lot
known as Number 17 (seventeen) Wall street, in the city of
New York, being an undivided three-fourths thereof, for the
term of his or her natural life, and after his or her death, I
give the same to his or her children, the issue of any deceased
child, if any, to take its parent's share.    Should either of my
said sons die leaving no issue him surviving, I give, devise and
bequeath his one-fifth of said premises to such of his above
mentioned brothers and sisters, if any, as may be then living,
and the issue of any deceased brother or sister above men-
tioned, if any, such issue to take the share its parent would
have taken if living.

" If either of my said daughters should die without leaving
issue her surviving, I give her one-fifth of said premises to my
granddaughter, Mary Matilda Moore, for her life, and after
her death to her issue, if any.    If none, to such of my said
sons and daughters, if any, as may then be living, and the
issue, if any, of any deceased son or daughter above men-
tioned, such issue to take its parent's share."

Jefferson Coddington, one of the sons mentioned in this devise, died in 1876, before the testatrix, leaving two children, one of whom is the party who brings this appeal. In August, 1876, after his death, the testatrix by a codicil to her will substituted in the place of the life estate devised to him in the will, a life estate in each of her surviving children. The question in this case is how far and to what extent this codicil changed the other dispositions in the will with respect to the real estate described therein. The codicil is as follows:

"Second. That the one-fifth part of my interest in the premises No. 17 Wall street, which in and by said will I devised to my said son Jefferson, his issue, etc., shall be divided into four equal parts, one of which parts I give and bequeath to each of my now surviving children for and during the natural life of such child, and after his or her death to the same person or persons who under and by virtue of said will shall be entitled to the remainder of the one-fifth therein devised for life to such child."

Since the death of the testatrix and the admission of the will to probate, two of the four children who survived her have died, namely, a son and a daughter, the former leaving issue but the latter without issue. The question is, who takes the remainders in the share originally devised to Jefferson for life, and which after his death was by the codicil devised to the four surviving children of the testatrix for life. By the original will, which devised one-fifth of the Wall street property to Jefferson for life, a remainder was to vest in his two children, and the decision of the courts below is to the effect that these remainders were divested by the codicil. That view doubtless receives very strong support from the grammatical construction of the language of the codicil. But the intention of the testatrix, as it appears from the whole instrument should prevail over mere forms of expression. The general plan of the will with reference to this property was to allow her own children to enjoy it for life, with remainders to her grandchildren and their issue corresponding to the proportionate interest of their parents.

Where an estate is devised by a will, as it was in this case, to the children of Jefferson Coddington, such a provision cannot be regarded as revoked by subsequent language, capable of other reasonable construction, or less clear and certain than the language of the devise or bequest.

Whenever the will begins with an absolute gift, in order to cut it down, the latter part of the will must show as clear an intention in that direction as the prior part does to make it. A codicil will not operate to revoke a previous devise or bequest beyond the clear import of the language used. Effect must be given, so far as possible, to all parts of the will, and when the several provisions can be reconciled consistently with the intentions of the testator, as they appear and may be gathered from the original instrument and codicil, that construction will be favored. An estate once devised, or an interest intended to be given, will not be sacrificed on the ground of repugnancy, when it is possible to reconcile the provisions supposed to be in conflict. ( *Van Vechten* v. *Keator*, 63 N. Y. 55; *Taggart* v. *Murray*, 53 N. Y. 233; *Freeman* v. *Coit*, 96 N. Y. 63; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Clarke* v. *Leupp*, 88 N. Y. 228; *Hard* v. *Ashley*, 117 N. Y. 606; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Viele* v. *Keeler*, 129 N. Y. 199; *Redfield* v. *Redfield*, 126 N. Y. 466.)

Where the language is not clear, or where the meaning is doubtful, the courts will not favor an interpretation that revokes a devise once given; or disinherits an heir; or divests a remainder in fee once vested; or excludes issue from a remainder originally limited upon the life estate of a parent; or prevents the issue of a deceased child from participation in the distribution of the estate. (*Stokes* v. *Weston*, 142 N. Y. 433; *In re Brown*, 93 N. Y. 295; *Low* v. *Harmony*, 72 N. Y. 408; *Scott* v. *Guernsey*, 48 N. Y. 106.) The will in question should receive a construction in harmony with these rules; and if the will and codicil are reasonably capable of an interpretation that will continue the remainders in the children of Jefferson, according to the original plan of the deceased, that construction should be adopted.

We think that the testatrix did not intend to revoke that part of her will in which she devised to the children of Jefferson remainders limited upon his life estate. The purpose of the codicil was to substitute, after his death, the four surviving children, his brothers and sisters, to the life estate devised to him by the will. It was no part of the plan of the testatrix to change the disposition which she had already made of the remainders in the share of her deceased son. They had already vested under the will on its taking effect in his children, and no reason is apparent for withdrawing from them what had once been given. It is more reasonable to suppose that her intention was when executing the codicil to devise life estates to her own surviving children in the one-fifth originally given to the deceased son for life, and not to disturb the remainders in fee vested in his children, nor to disinherit them as to that part of her estate.

This construction is reasonable and just and warranted by the rules of law to which we have referred as applicable in the interpretation of the language of a testamentary instrument in which provisions of this character are expressed. It may not be the necessary construction, but it is enough if that meaning may reasonably be given to the words used. A construction more unfavorable to the claims of the children of Jefferson is possible by a close adherence to grammatical rules; but an intention on the part of the testatrix not to disturb what had been given them by the will is more reasonable and probable. It is not doing violence to the language of the testatrix to hold that the words " *such child* " at the end of the codicil referred to Jefferson, and if so the " person or persons who under and by virtue of said will shall be entitled to the remainder of the one-fifth," referred to his children. What the testatrix evidently meant was that her four surviving children should be substituted in the place of the one who had just died as to the life estate, and that his children should take the remainder under the codicil as they did under the original will, thus preserving the original plan of the will, except so far as a change was made necessary by death.

The whole question really resolves itself into the inquiry whether the testatrix by the codicil intended to substitute the issue of her four surviving children, as devisees of the remainder in Jefferson's share, in place of his own children. Such an intention on the part of the testatrix would constitute such a notable departure from the uniform plan of the will, as shown by the whole disposition, that it should not be imputed to her unless the language is open to no other construction.

In our opinion, the codicil is reasonably capable of the interpretation that the remainders devised to the children of Jefferson under the will have not been changed or divested, and so the contention in behalf of the infant defendant should prevail.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment and order reversed.