was owing to him, and for a small amount of moneys advanced. He adjusted the amount of his claim and the amount of their claims with the assignee. There is nothing in this record but mere suspicion to indicate that the adjustment was not fair and honest; in any event, it is not clear that it can be inquired into in this action. The allowance of claims by the assignee could be reviewed on his accounting, but the plaintiff was not a stockholder of the old company, and, having accepted the settlement, it may be that neither he nor Schroeder is now in a position even to call the assignee to account.

The interlocutory judgment proceeds on the theory of fraud. We have carefully considered all of the evidence, and are of opinion that the evidence does not warrant the findings of the learned trial judge in this regard, and, as before observed, that the interlocutory judgment requires accountings as to matters that cannot be reached in this action, and proceeds upon conflicting theories, and cannot be sustained. The principal inconsistencies are that, in addition to requiring that the difference between the actual value of the property received by the new corporation and $140,000, being the par value of the stock and bonds issued therefor, be now paid over, with interest, which alone would make the new corporation, in whose right this action is brought, whole, it requires that the $30,000 or $31,000 be also paid over to the new corporation, and also that all of the other assets of the old corporation be accounted for to the new corporation or its trustee.

It follows, therefore, that the interlocutory judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur. HOUGHTON, J., dissents.

---

(113 App. Div. 893; 50 Misc. Rep. 362)

### MULL v. MASTEN et al.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

WILLS—CONSTRUCTION—ESTATE CREATED.

> Where a will leaves all the testator's property to his son J., his heirs and assigns, "except that in the event of his death without heirs by his present wife then she, the present wife of the said J., shall have the use of the property hereby devised to J. during her life, or so long as she remains his widow, and on her decease or remarriage then said property hereby devised to J." to go to the children of the testator's daughter and another son, share and share alike, this was an absolute devise to J., except in the event of his death without children before the death of his "present wife," but not excepting the event of her death without children before his death.

Appeal from Special Term, Rensselaer County.

Action by Anna J. Mull against Edson W. Masten and others, impleaded with Frank Mull and others. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

The following is the opinion of the court below (Cochrane, J.):

This is an action to partition real estate in the town of Schodack, Rensselaer county, N. Y. The property in question was owned by Cornelius I. Schermer-

horn at the time of his death, which occurred in 1863. He left a will, which was duly admitted to probate, and by the residuary clause of which he devised said property. Such residuary clause is the only portion of the will which need be considered, and is as follows: "All the rest and residue of my property, real and personal, I give and devise and bequeath to my son John, his heirs and assigns, except that in the event of his death without heirs by his present wife, then she, the present wife of said John, shall have the use of the property hereby devised to John during her life or so long as she remains his widow, and on her decease or remarriage then said property hereby devised to John to go to the children of my daughter, Alida, and my son Isaac, share and share alike." At the time of the testator's death, his said son John and also John's wife were about 33 years of age. The wife of John died in 1884. He died in 1902. They never had any children. The defendants, who demur, acquired during the lifetime of John his interest in the property in question, and claim the same under the residuary clause of the will above set forth, invoking the well-established general rule that where real estate is devised in terms denoting an intention that the devisee shall take a fee on the death of the testator, followed by a devise over in case of the death of such devisee without issue, reference is made to the death of the primary devisee without issue in the lifetime of the testator, and that such primary devisee surviving the testator takes an absolute estate in fee simple. This rule, together with its limitations, qualifications, and exceptions, is stated in Becker v. Becker, 22 App. Div. 234, 47 N. Y. Supp. 866, and in the cases there cited, and also in many other cases. The plaintiff and some of the defendants are children of the testator's daughter, Alida, referred to in the said residuary clause, and claim that the context and language of the will evince that this case constitutes an exception to the general rule above mentioned, and that, although John survived the testator, yet as he died without heirs, the property descends to the children of the testator's daughter, Alida, under such residuary clause; the testator's son Isaac mentioned therein not having any living descendants. The question thus raised as to the application to individual cases of the general rule of construction above enunciated is one which has frequently troubled the court and provoked endless discussion; but, as I construe this will, such question is not necessarily involved in the present action. My theory of the construction of this will differs from that advanced by either party. Before stating such theory, it may be well to observe that there is a serious objection to construing the will as desired by plaintiff. Such construction, in the event that John had survived his wife without children, remarried, and then had children, would exclude such children from all possible participation in the property in question. It does not militate against the force of this argument that as a matter of fact John had not remarried. We must consider the will from the standpoint of the testator when he executed the same, more than 40 years ago, and it must receive the same construction as if there were children of a subsequent marriage present in court interposing this demurrer. There must be some imperfection in any reasoning process which accomplishes such a result, unless that was clearly the testator's intention. That such was not his intention is evidenced by the fact that, had there been a remarriage and children of both marriages, John would unquestionably have taken an absolute and indefeasible estate of inheritance, and neither the children of the first or second marriage would by the terms of the will be excluded from participation in the property. And that the testator had in mind the possibility of a second marriage by John is indicated by the fact that not once merely, but twice, in the said residuary clause he speaks of John's "present wife." I think there was an absolute devise to John, except only in the event of his death without children before the death of his "present wife," but not excepting the event of such wife's death without children before his death. The primary rule of construction is to ascertain and effectuate, if possible, the intent of the testator. Certainly the testator's purpose was not to protect John against his own improvidence, because unquestionably in the event of children by his "present wife" he would have taken an absolute and indefeasible title. The purpose of the exception in the residuary clause was to make provision for John's "present wife" in the event that she survived him without children. If she

had children, they, of course, would naturally receive the property as the heirs of John. But if she survived John without children, she would be practically unprotected, and it was for her benefit in such an event that the provision in question was made. The testator was providing for the wife's survivorship of John, and not in this particular clause for John's survivorship of his wife. That was already provided for by the absolute devise to him, wherein he used words of inheritance, viz., "his heirs and assigns"; the only limitation thereto being a provision for John's wife, whom he knew and evidently held in high esteem, such provision being intended for her benefit in case she survived John childless. It is a well-recognized rule that "an absolute gift is not cut down or limited by subsequent language used, unless the intent to do so appears in as clear and unmistakable language as that which expresses the absolute gift." Mee v. Gordon, 104 App. Div. 520, 93 N. Y. Supp. 675; Banzer v. Banzer, 156 N. Y. 429, 51 N. E. 291; Goodwin v. Coddington, 154 N. Y. 283, 48 N. E. 729; Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388; Byrnes v. Stillwell, 103 N. Y. 453, 9 N. E. 241, 57 Am. Rep. 760. It certainly cannot be said that the alleged limitation of the absolute devise to John in the event that he survived his wife "appears in as clear and unmistakable language as that which expresses the absolute gift" to John. Save for the absolute devise to John, the will is entirely silent as to whom the property should go in the event of his death without children, except that it should go to his "present wife" during her life or widowhood, which could not happen unless she survived him. And it seems to me that this theory of construction finds further confirmation in the subsequent provision of the residuary clause, where the testator provides for the gift over to the children of his daughter, Alida, and son Isaac. "On her [John's wife] decease or remarriage then" the property was to go to them; that is, at that time, immediately on such "decease or remarriage," which could happen if the exception to the absolute devise to John was intended to apply only in case his wife survived him, but which could not happen if John survived his wife, as is illustrated by the present action; for the plaintiff will scarcely claim that this action could have been maintained during the 18 years which intervened between the death of John's wife and his own death.

The construction of the will which seems to me reasonable and proper, as above indicated, is one which, from the testator's standpoint when he executed the same, could not lead to a harsh, illogical, and unnatural result. It also eliminates from the case the vexatious question as to whether the death of John, mentioned in the will, is to be referred to a time before or after the death of the testator, and it seems to me that it fully and fairly effectuates the intent of the testator. For these reasons, I am constrained to sustain the demurrer.

Demurrer sustained, with costs, and with the usual leave to plead over.

Argued before PARKER, P. J., and SMITH, CHESTER, and KELLOGG, JJ.

Collier, Collier & Browning (John Cadman, of counsel), for plaintiff.
Mead & Hatt (George J. Hatt, of counsel), for defendants Edson W. Masten and others.

PER CURIAM. Judgment affirmed, with costs upon opinion of Cochrane, J., at Special Term.

---

(50 Misc. Rep. 629)

DOBYNS v. COMMERCIAL TRUST CO.

(Supreme Court, Appellate Term. April 24, 1906.)

1. APPEAL—TIME FOR TAKING—TERMINATION OF TIME.

Where appellee's claim that appellant's time to appeal had expired when the notice of appeal was served was based upon the technical sufficiency of the entry of judgment and notice of entry to set the time running, the