Keating, J.
Samuel Rosenzweig died on July 2, 1953. Surviving him were his widow, Aranka, his only child, Erica, and his brother Emanuel.
The last will and. testament of the deceased, executed some six years prior to his death, bequeathed his personal effects to his widow; $10,000 to his brother Emanuel; and the balance in a residuary trust measured by the life of his daughter. Erica, at the time of his death 20 years of age. The income of the testamentary trust, insofar as is here relevant, was distributed by article Fourth of the will as follows:
1. Fifteen per cent of the income, but not less than $300 per month, was to be paid to the widow for her life and upon her death or remarriage ‘ ‘ her interest in the trust shall terminate and shall be payable to my brother ’ ’.
2. Seventy per cent of the income, but not less than $300 per month, ivas to be paid to Erica for her life. She was to receive her share of the corpus in two installments, one half upon her attaining the age of 30 and the balance upon her attaining the age of 35.
3. Upon Erica’s death, the residuary trust was to terminate with the entire principal thereof together with accrued income, if any, to be distributed in accordance with a scheme not here material.
*95 Article Fifth of the will provided that, if in any month the income was insufficient to yield the minimum monthly income specified by the will, the deficiency or deficiencies were to be made up by an invasion of the principal.
In addition, under the Twelfth article, the widow was named executrix and cotrustee.
The bequests for the benefit of the wife in the Fourth article have given rise to the litigation with which we are concerned on this appeal.
The trust benefit created for the wife was subject to termination upon her remarriage and was not a ‘ ‘ benefit for life ” under the provisions of section 18 of the Decedent Estate Law (Matter of Byrnes, 260 N. Y. 465). The wife, therefore, became entitled to elect to take her intestate share outright.
Having chosen to exercise that right, the widow in 1954 filed a petition for construction of the Fourth article of the will for the purpose of determining what was to be done with the income intended for her benefit under the trust.
As noted earlier, the will provided that the brother, Emanuel, would succeed to the life interest created for the widow only in the event of her death or remarriage. The Surrogate, however, held that this indicated an intent that the brother succeed to the wife’s interest whenever that interest was terminated; that the exercise of the right of election terminated the wife’s interest in the trust and that, therefore, the brother was entitled to the trust income set aside for the wife (Matter of Rosenzweig, 4 Misc 2d 142).[1] Computation of the widow’s share of the estate and contributions thereto by other interests under the will were left for determination in a subsequent accounting proceeding.
The decree of the Surrogate was affirmed without opinion by. the Appellate Division (7 A D 2d 969) and no further appeal was taken.
Now, the widow, as executrix of the estate, has filed a petition for a voluntary accounting and a settlement of her final account, bringing up for determination the method of contribution by various legatees to make up her elective share. Upon this accounting proceeding, Surrogate Cox held that the prior ruling of Surrogate Colliss established the right of Emanuel *96 to receive 15% of the income of the trust with a monthly minimum of $300 per month for life and held that the widow’s elective share should be satisfied by a prorata apportionment between the general legacy to the brother and the principal of the residuary trust.
The daughter, Erica, appealed this determination to the Appellate Division. It was her contention that, in determining the method by which the widow’s elective share was to be satisfied, the Surrogate should have first looked for contribution to the bequest made to the widow in the will and only the remaining deficiency should have been made up by prorata contributions from other legatees.
Erica proposed that the value of the widow’s share be calculated as if the widow had actually been given a right to 15% of the income or $300 per month for life. The size of the corpus was such that it was apparent that the monthly annuity would never exceed $300 and the commuted value of the widow’s share, based on that annuity, came to $49,716.
By application of the commuted value of the widow’s interest to her elective share there would be no surplus of assets from which Emanuel could receive any payments as successor in interest to her.
The Appellate Division agreed with the daughter and reversed the Surrogate, finding that, ‘‘ In light of the language of the will and the intention of the testator as gleaned from such language and the general scheme of the will, we hold that the interest of the widow under the will must first be applied in satisfaction of her elective share and that such application exhausts her interest, leaving nothing to which Emanuel can succeed as her successor in interest ” (23 A D 2d 427, 434).
On this appeal by Emanuel, we must decide the proper method for satisfying the widow’s elective share.
There do not appear to be any Court of Appeals or even Appellate Division decisions dealing with this problem. And the cases decided by the Surrogates appear to be somewhat conflicting.
For reasons which shall be enumerated, we believe Surrogate Cox was correct and that the proper rule should be that “ [w]here the right of election is absolute, i.e. nothing is given to the surviving spouse, or a trust which is illusory is given, the spouse upon making the election loses any benefits of the *97 will. She receives the intestate share outright and all legatees contribute ratably to her share, either one-third or one-half of what is received” (Third Report of Temporary State Commission on Modernization, Revision and Simplification of Law of Estates [N. Y. Legis. Doc., 1964, No. 19], p. 195).
In the above-quoted report the two leading and conflicting lower court cases (Matter of Byrnes, 149 Misc. 449; Matter of Curley, 160 Misc. 844) are discussed.
In Matter of Byrnes, as in the case at bar, the testator gave his wife the benefit of a trust, subject to termination upon her death or remarriage. As a result the wife was permitted to exercise an absolute right of election. Surrogate Foley was faced with the same problem as in the case at bar, namely the method by which that elective share was to be satisfied.
Surrogate Foley found (p. 453) that “ Under section 18 [of the Decedent Estate Law], the effect of the exercise of the absolute right of election of the widow to take her full statutory share constitutes a surrender of all her rights under the will. In this particular estate the interest of the widow, as life tenant of the residuary trust, has been nullified by her election.” He further held that the widow’s intestate share to which she became entitled by the exercise of her right of election was to be satisfied by ratable contributions from the bequests given to all legatees.
11 By apportioning the withdrawn share against all beneficiaries, the general plan of the will may be, to a great extent, preserved and the balance maintained between the respective preliminary and residuary beneficiaries.”
In the ease at bar, it was conclusively determined, in the earlier proceeding, that the testator intended that his brother succeed to his wife’s interest upon the exercise of her right of election. Therefore, when that right was exercised, she was divested of any interest in the trust both by the terms of the instrument and by operation of law. She became entitled to take her intestate share outright and that share should be satisfied by prorata . contributions from each of the legacies.
The position urged by the daughter and adopted by the Appellate Division would not only defeat what has conclusively been found to have been the intent of the testator, but is illogical as well.
The widow is entitled to take her intestate share outright precisely because the trust created for her benefit was not a *98 trust for her life. Had the trust, in fact, been for her life, she would have been entitled only to a limited right to elect the difference between the capital value of the trust and the amount she would- have been entitled to in intestacy (Decedent Estate Law, § 18, subd. [£]). If, therefore, the basis of her right to elect to take her intestate share outright is that she did not receive a life income, it does not seem reasonable to evaluate her interest in the trust as if she had.
For the same reason, the case of Matter of Curley (supra), relied upon by the Appellate Division and the respondent, does not represent the more logical or better reasoned approach to this problem. In Curley, the widow was entitled to take her intestate share outright because the nature and extent of her life interest was uncertain. (See Matter of Curley, 245 App. Div. 255, 257, affd. 269 N. Y. 548.) The Surrogate adopted the same formula for determining’ the method of contribution urged by the respondent. He commuted the value of the widow’s “ life ” interest in the trust and held that that would first be applied to the satisfaction of the wife’s intestate share and only the difference would be made up by prorata contributions from the other legatees.
It might be noted that the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, in its study of this problem, found, the method of satisfying the widow’s elective share, employed in Matter of Byrnes, to he supported by the weight of authority.[2] And in its report and recommendation to the Legislature the commission indicated that the new revised statute was intended to “ continue the rule of present law of making each beneficiary of a ‘ testamentary provision ’ as defined contribute pro rata to the elective share according to the rules set forth in the Byrnes [case].” (Third Report of Temporary State Comm., supra, p. 231.)
The rule, relied upon by the respondent, that the bequest to a spouse is looked to first to satisfy the elective right is applicable *99 where the spouse exercises a limited as opposed to an absolute right of election. A limited right arises when the bequest or devise for the benefit of the spouse is not equivalent to the share she would be entitled to in intestacy.
Under such circumstances, the spouse keeps that which is given to her and the difference between that and her elective share is made up by prorata contributions from the other legatees. This method is not only the most logical but gives effect to the underlying policy that ‘ ‘ the terms of the will shall as far as possible remain effective ” (Decedent Estate Law, § 18, former subd. [2]).
Thus, in the case at bar, if the trust benefits had been conferred upon the spouse, subject to termination only by her death, and a right of election arose by virtue of the fact that the capital value of the trust was not equal to what would have been her intestate share, each legatee would have been required to contribute pro rata to make up the difference between the capital value of the corpus and the intestate share. The remainder of her elective right would then have been satisfied by the life benefits given her under the terms of the trust (Decedent Estate Law, § 18, subd. [f]; Matter of Reis, 182 Misc. 754; Matter of Goldsmith, 175 Misc. 757; Third Report of Temporary State Comm., supra).
The real problem with this case was that the testator, contrary to the opinion of Surrogate Collins in the earlier construction proceeding, never thought about what would occur if his wife chose to exercise her right of election. It is no doubt true, as the Appellate Division observed, that if the testator had considered it, the will might have been quite different and that Emanuel might not have come off as well as he did. Our job as Judges, however, is not to rewrite wills but articulate rational rules of law which will hopefully achieve reasonable and just results in most cases.
The orders of the Appellate Division should be reversed, with costs to all parties filing briefs payable out of the estate.
Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Soileppi and Bergan concur.
Orders of Appellate Division reversed and decrees of the Surrogate’s Court reinstated, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

. We take no position on the correctness of the result reached ip this proceeding,

. (See Matter of Greditor, 156 N. Y. S. 2d 360; Matter of Bleier, 20 Misc 2d 322; Matter of Lunney, 21 Misc 2d 455; Matter of Meyer, 119 N. Y. S. 2d 737; Matter of Spencer, 145 N. Y. S. 2d 397; Matter of Taliento, 9 Misc 2d 167; Matter of Furno, 199 Misc. 273; Matter of Vitale, 118 N. Y. S. 2d 773; Matter of Giddings, 198 Misc. 536; Matter of Schnitzer, 118 N. Y. S. 2d 779; Matter of Schulman, 115 N. Y. S. 2d 169; Matter of Devine, 147 Misc, 273.)